UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN LAROY, MARCO GIRAO, and CHARLES VALICENTI, individually and on behalf of all other persons similarly situated,<br><br>            Plaintiffs,<br><br>-against-<br><br>THE CITY OF NEW YORK,<br><br>            Defendant. | CIVIL ACTION CASE NO: 21-cv-7777<br><br>**ACTION UNDER 29 U.S.C. § 203** *et seq.* |

  Named Plaintiffs, KEVIN LAROY, MARCO GIRAO, AND CHARLES VALICENTI, on behalf of herself and all other persons similarly situated (collectively the "Plaintiffs"), employees currently or formerly employed by The City of New York ("Defendant") by and through their attorneys, Virginia & Ambinder, LLP, allege as follows:

## NATURE OF ACTION

  1. This action is brought pursuant to the Fair Labor Standards Act (hereinafter referred to as "FLSA"), 29 U.S.C. §§ 207 and 216(b) to recover earned but unpaid overtime compensation owed to the Named Plaintiffs and members of the Putative Collective for services performed while employed by Defendant.

  2. Beginning in approximately September of 2018 and continuing to the present, Defendant engaged in a policy and practice of failing to pay Plaintiff and others similarly situated overtime at the proper rate for hours worked in excess of forty (40) hours per week.

  3. The Named Plaintiffs have initiated this action on behalf of themselves and a putative collective comprised of herself and all persons similarly situated to recover the overtime compensation that they were deprived of, plus interest, damages, attorneys' fees, and costs.

1

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the claims in this action, pursuant to the provisions of 28 U.S.C. §§ 1331, 1337, and 1343.

5. This Court has subject matter jurisdiction over Plaintiffs' claims under the FLSA, pursuant to 29 U.S.C. § 216(b).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as the Defendant's principal place of business is in this district.

7. The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

8. Named Plaintiff Kevin LaRoy is a resident of the State of New York, and a member of District Council 37 of the American Federation of State, County and Municipal Employees, Social Services Employees Union Local 2507.

9. Plaintiff LaRoy has been employed by the Fire Department of the City of New York ("FDNY") as an Emergency Medical Service ("EMS") worker at all times relevant.

10. Named Plaintiff Marco Girao is a resident of the State of New York, and a member of District Council 37 of the American Federation of State, County and Municipal Employees, Social Services Employees Union Local 2507.

11. Plaintiff Girao has been employed by the FDNY as an EMS worker at all times relevant.

12. Named Plaintiff Charles Valicenti is a resident of the State of New York, and a member of District Council 37 of the American Federation of State, County and Municipal Employees, Social Services Employees Union Local 2507.

13. Plaintiff Valicenti has been employed by the FDNY as an EMS worker at all times relevant.

14. Each similarly situated Plaintiff is an "employee" as contemplated by the FLSA, 29 U.S.C. § 203(e).

15. Defendant, The City of New York, is a municipal corporation duly organized and existing under the Constitution and laws of the State and City of New York.

16. Defendant, The City of New York, is a judicial entity amenable to suit under the FLSA as it is, and was at all relevant times, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. §203(x).

17. Pursuant to N.Y.C. Charter § 396, the City of New York is the proper Defendant in this action.

18. At all relevant times, members of the putative collective were members of AFSCME District Council 37 Local 2507.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19. This action is properly maintainable as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b).

20. This action is brought on behalf of Plaintiff and a putative collective consisting of similarly situated employees who, as members of AFSCME District Council 37 EMS workers, Local 2507, performed work for Defendant at any time since September 8, 2018 (the "Putative Collective"). The proposed Putative Collective does not include members of AFSCME District Council 37 Local 3621, Uniformed EMS Officers Union.

21. Plaintiffs and the Putative Collective are non-exempt employees eligible to be paid for every hour worked including overtime compensation for those hours worked over forty in a consecutive seven day week.

22. Plaintiffs and potential plaintiffs who elect to opt-in as part of the collective action are all victims of the Defendant's common policy and/or plan to violate the FLSA by failing to provide the correct overtime wages at a rate of one and one half times their regular hourly rate of pay, inclusive of paid differentials and other payments required to be included in the calculated "regular rate" pursuant to 29 CFR §§ 778.200 *et seq.*, for all time worked in excess of forty (40) hours in any given week pursuant to 29 U.S.C. § 207.

23. Upon information and belief, Defendant uniformly applies the same unlawful employment policies, practices, and procedures to all members of the Putative Collective.

24. The putative collective is so numerous that joinder of all members is impracticable. Although the precise number of putative collective members is unknown, upon information and belief, the size of the Putative Collective is believed to be in excess of 500 individuals. In addition, the names of all potential members of the putative collective are not known.

25. The questions of law and fact common to the putative collective predominate over any questions affecting only individual members. These questions of law and fact include, but are not limited to: whether Defendant failed to pay the Plaintiffs and members of the putative collective their earned overtime wages, at the full rate of one and one half the times the regular rate of pay inclusive of all differentials and other payments required to be included in the calculated "regular rate" pursuant to 29 CFR §§ 778.200 *et seq*.

26. The claims of Plaintiffs are typical of the claims of the Putative Collective.

27. Plaintiffs and their counsel will fairly and adequately protect the interests of the putative class. The Plaintiffs have retained counsel experienced in complex wage and hour class action litigation.

28. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy. The members of the putative collective lack the financial resources to adequately prosecute separate lawsuits against Defendant. A collective action will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to the Defendant's policies and practices.

## FACTS

29. Pursuant to the FLSA, 29 U.S.C. 207, "no employer shall employ any of their employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives overtime compensation for their employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

30. Further, pursuant to 29 U.S.C. § 203(d), an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."

31. Plaintiffs are presently employed or were previously employed by Defendant City of New York at any time between September 8, 2018 and the present.

32. Plaintiffs and other members of the Putative Collective are "employees," within the meaning contemplated in the FLSA, 29 U.S.C. § 203(e).

33. Defendant is an "employer" within the meaning contemplated in the 29 U.S.C. § 203(d), and consequently are liable for violations of the FLSA.

34. On information and belief the Named Plaintiffs and members of the Putative Collective are paid certain bonus compensation above their base hourly rate of pay such as longevity pay after

a certain amount of years in service, night-shift differentials, assignment differentials, and other bonus compensation.

35. Defendant has engaged in a pattern and practice of failing to ensure that Plaintiffs received payment for all overtime hours worked in any given week, at time and one-half their regular rate of pay, inclusive of earned differentials and other bonus compensation.

36. Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and its implementing regulations, *see e.g.* 29 C.F.R. § 778.208 *et seq.*, differentials and other payments must be included as part of Plaintiffs' "regular rate" of pay for purposes of calculating overtime compensation.

37. However, Defendant does not include earned differentials and other covered payments when calculating Plaintiffs' regular hourly rate of pay, which in turn results in Plaintiffs being paid at an incorrect time and one-half overtime rate.

38. Plaintiffs' overtime rates are miscalculated, and Plaintiffs are not compensated at the full rate of one- and one-half times their regular rate of pay inclusive of the paid differentials and other covered payments.

39. Named Plaintiff LaRoy often worked more than forty (40) hours in a given week.

40. Named Plaintiff LaRoy did not receive proper overtime payments at a rate of time and one half her regular rate of pay inclusive of earned differentials and other covered payments.

41. As an example, LaRoy's paystub, dated November 13, 2020 (the "LaRoy Paystub," a copy of which is annexed hereto as "Exhibit A"), exemplifies how he was specifically underpaid by Defendants' practice of not paying overtime rates that included differential payments.

42. Upon information and belief, LaRoy's paystub reflects combined regular time payments for two weeks under the column entitled "This Period Amount Earned," and overtime, along with night shift and other differential payments, which were separated into the first week of a given

overtime pay period (in a column on the Paystub entitled "Prior Period Amount Earned") and the second week of a given overtime pay period (in a column on the Paystub entitled "This Period Amount Earned").

43. The LaRoy Paystub reflects 75 hours of "RECURRING REGULAR GROSS" reflecting a total gross amount earned of $2,879.67. *See* Exhibit A. This reflects payment for two weeks of LaRoy's regularly scheduled 37.5-hour workweek. A review of Mr. LaRoy's City Time data for this period shows that the $2,879.67 consists of $2,526.37 in payments for 75 hours of straight time, with an additional line-item payment of $353.30 delineated as payment for 0 hours. Dividing $2,879.67 by 75 yields a regular base hourly rate of $38.40 per hour.

44. The LaRoy Paystub further reflects a line labelled "PAID OVERTIME" with a total amount earned for "This Period" of $1,374.25 for 26:45 hours of overtime work over and above the regular time work, which is listed under the "This Period Amount Earned." column as having been earned in the second week of the overtime pay period. Upon information and belief, "26:45" represents 26 hours and 45 minutes, or 26.75 hours. Dividing $1,374.25 by 26.75 yields a rate of pay for "overtime" work of $51.37 per hour.

45. LaRoy's base hourly rate of $38.40, multiplied by 1.5, would yield a calculated base overtime rate of $57.60.

46. On its face, the calculated $51.37 per hour rate of "overtime" pay is less than time-and-one-half the regular $38.40 rate, or $57.60 per hour.

47. However, LaRoy received a number of differentials which, pursuant to 29 C.F.R. § 778.208, "must be totaled in with other earnings to determine the regular rate on which overtime pay must be based."

7

48.  Specifically, under the "This Period Amount Earned" column LaRoy received $30.16 in Night Shift differentials; $303.17 in Specialty Assignment Differentials; $26.23 in Non-Pensionable Longevity Differentials; $167.93 in Pensionable Longevity Differentials; and $83.33 in Current Recurring Increment Payments.

49. In accordance with 29 C.F.R. §§ 778.207(b), 778.208, and 778.209(a), these payments "must be included in computing [her] regular hourly rate of pay and overtime compensation. No difficulty arises in computing overtime compensation if the bonus covers only one weekly pay period. The amount of the bonus is merely added to the other earnings of the employee… and the total divided by total hours worked." 29 C.F.R. § 778.209(a).

50.  Combined, the $30.16 in Night Shift differentials; $303.17 in Specialty Assignment Differentials; $26.23 in Non-Pensionable Longevity Differentials; $167.93 in Pensionable Longevity Differentials; and $83.33 in Current Recurring Increment Payments constitute $680.26 in additional compensation which must be included in the regular rate of pay for purposes of overtime pay calculations.

51.  In the workweek in question, LaRoy worked 37.5 regularly scheduled hours; and 26.75 hours of "overtime," for a total of 64.25 hours of work. Dividing the $680.26 in differential payments which must be included in the base rate of pay for purposes of calculating overtime by 64.25 hours, LaRoy's regular rate of pay should have been increased by ($680.26 / 64.25 =) $10.59 per hour, on top of his regular $38.40 rate of pay, for a total "regular rate" of pay of $48.99 per hour, as defined in 29 C.F.R. § 778.209.

52.  As such, LaRoy's overtime rate of pay should have been time-and-one-half of $48.99 per hour, or $73.48, far in excess of the calculated $51.37 rate of overtime pay reflected on the Paystub.

53.  Named Plaintiff Girao often worked more than forty (40) hours in a given week.

54. Named Plaintiff Girao did not receive proper overtime payments at a rate of time and one half her regular rate of pay inclusive of earned differentials and other covered payments.

55. As an example, Girao's paystub, dated May 14, 2021 (the "Girao Paystub," a copy of which is annexed hereto as "Exhibit B"), exemplifies how he was specifically underpaid by Defendants' practice of not paying overtime rates that included differential payments.

56. Upon information and belief, Girao's paystub reflects combined regular time payments for two weeks under the column entitled "This Period Amount Earned", and overtime, along with night shift and other differential payments, which were separated into the first week of a given overtime pay period (in a column on the Paystub entitled "Prior Period Amount Earned") and the second week of a given overtime pay period (in a column on the Paystub entitled "This Period Amount Earned").

57. The Girao Paystub reflects 75 hours of "RECURRING REGULAR GROSS" reflecting a total gross amount earned of $2,879.67. *See* Exhibit A. This reflects payment for two weeks of Girao's regularly scheduled 37.5-hour workweek. A review of Mr. Girao's City Time data for this period shows that the $2,879.67 consists of $2,526.37 in payments for 75 hours of straight time, with an additional line-item payment of $353.30 delineated as payment for 0 hours Dividing $2,879.67 by 75 yields a regular base hourly rate of $38.40 per hour.

58. The Girao Paystub further reflects a line labelled "PAID OVERTIME" with a total amount earned for "This Period" of $783.09 for 16:00 hours of overtime work over and above the regular time work, which is listed under the "This Period Amount Earned" column as having been earned in the second week of the overtime pay period. A review of Mr. Girao's City Time data for this week shows that this $783.09 figure consists of $165.73 in payments for 8 hours of overtime on May 1, 2021; $60.08 in payments for "n/a" hours of overtime on May 1, 2021; $60.08 in

9

payments for "n/a" hours in overtime on April 28, 2021; and $497.20 in payments for 8 hours of overtime on April 28, 2021. Dividing $783.09 by 16 yields a rate of pay for "overtime" work of $48.94 per hour.

59. Girao's base hourly rate of $38.40, multiplied by 1.5, would yield a calculated base overtime rate of $57.60.

60. On its face, the calculated $48.94 per hour rate of "overtime" pay is less than time-and-one-half the regular $38.40 rate, or $57.60 per hour.

61. However, Girao received a number of differentials which, pursuant to 29 C.F.R. § 778.208, "must be totaled in with other earnings to determine the regular rate on which overtime pay must be based."

62. Specifically, under the "This Period Amount Earned" column Girao received $149.57 in Night Shift differentials; $303.17 in Specialty Assignment Differentials; $167.93 in Pensionable Longevity Differentials; and $83.33 in Current Recurring Increment Payments.

63. In accordance with 29 C.F.R. §§ 778.207(b), 778.208, and 778.209(a), these payments "must be included in computing [her] regular hourly rate of pay and overtime compensation. No difficulty arises in computing overtime compensation if the bonus covers only one weekly pay period. The amount of the bonus is merely added to the other earnings of the employee… and the total divided by total hours worked." 29 C.F.R. § 778.209(a).

64. Combined, the $30.16 in Night Shift differentials; $303.17 in Specialty Assignment Differentials; $167.93 in Pensionable Longevity Differentials; and $83.33 in Current Recurring Increment Payments constitute $584.59 in additional compensation which must be included in the regular rate of pay for purposes of overtime pay calculations.

65. In the workweek in question, Girao worked 37.5 regularly scheduled hours; and 16 hours of "overtime," for a total of 53.5 hours of work. Dividing the $584.59 in differential payments which must be included in the base rate of pay for purposes of calculating overtime by 53.5 hours, Girao's regular rate of pay should have been increased by ($584.59 / 53.5 =) $10.93 per hour, on top of his regular $38.40 rate of pay, for a total "regular rate" of pay of $49.33 per hour, as defined in 29 C.F.R. § 778.209.

66. As such, Girao's overtime rate of pay should have been time-and-one-half of $49.33 per hour, or $74.00, far in excess of the calculated $48.94 rate of overtime pay reflected on the Paystub.

67. Named Plaintiff Valicenti often worked more than forty (40) hours in a given week.

68. Named Plaintiff Valicenti did not receive proper overtime payments at a rate of time and one half her regular rate of pay inclusive of earned differentials and other covered payments.

69. As an example, Valicent's paystub, dated June 25, 2021 (the "Valicenti Paystub," a copy of which is annexed hereto as "Exhibit C"), exemplifies how he was specifically underpaid by Defendants' practice of not paying overtime rates that included differential payments.

70. Upon information and belief, Valicenti's paystub reflects combined regular time payments for two weeks under the column entitled "This Period Amount Earned", and overtime, along with night shift and other differential payments, which were separated into the first week of a given overtime pay period (in a column on the Paystub entitled "Prior Period Amount Earned") and the second week of a given overtime pay period (in a column on the Paystub entitled "This Period Amount Earned").

71. The Valicenti Paystub reflects 75 hours of "RECURRING REGULAR GROSS" reflecting a total gross amount earned of $2,851.69. *See* Exhibit A. This reflects payment for two

weeks of Valicenti's regularly scheduled 37.5-hour workweek. Dividing $2,879.67 by 75 yields a regular base hourly rate of $38.02 per hour.

72. The Valicenti Paystub further reflects a line labelled "PAID OVERTIME" with a total amount earned for "This Period" of $1,466.36 for 28:45 hours of overtime work over and above the regular time work, which is listed under the "This Period Amount Earned" column as having been earned in the second week of the overtime pay period. Upon information and belief, "28:45" represents 28 hours and 45 minutes, or 28.75 hours. Dividing $1,466.36 by 28.75 yields a rate of pay for "overtime" work of $51.00 per hour.

73. Valicenti's base hourly rate of $38.02, multiplied by 1.5, would yield a calculated base overtime rate of $57.03.

74. On its face, the calculated $51.00 per hour rate of "overtime" pay is less than time-and-one-half the regular $38.02 rate, or $57.03 per hour.

75. However, Valicenti received a number of differentials which, pursuant to 29 C.F.R. § 778.208, "must be totaled in with other earnings to determine the regular rate on which overtime pay must be based."

76. Specifically, under the "This Period Amount Earned" column Valicenti received $25.73 in Night Shift differentials; $300.21 in Specialty Assignment Differentials; $141.69 in Pensionable Longevity Differentials; and $83.33 in Current Recurring Increment Payments.

77. In accordance with 29 C.F.R. §§ 778.207(b), 778.208, and 778.209(a), these payments "must be included in computing [her] regular hourly rate of pay and overtime compensation. No difficulty arises in computing overtime compensation if the bonus covers only one weekly pay period. The amount of the bonus is merely added to the other earnings of the employee… and the total divided by total hours worked." 29 C.F.R. § 778.209(a).

78. Combined, the $25.73 in Night Shift differentials; $300.21 in Specialty Assignment Differentials; $141.69 in Pensionable Longevity Differentials; and $83.33 in Current Recurring Increment Payments constitute $550.96 in additional compensation must be included in the regular rate of pay for purposes of overtime pay calculations.

79. In the workweek in question, Valicenti worked 37.5 regularly scheduled hours; and 28.75 hours of "overtime," for a total of 66.25 hours of work. Dividing the $550.96 in differential payments which must be included in the base rate of pay for purposes of calculating overtime by 66.25 hours, Valicenti's regular rate of pay should have been increased by ($550.96 / 66.25 =) $8.32 per hour, on top of his regular $38.02 rate of pay, for a total "regular rate" of pay of $46.34 per hour, as defined in 29 C.F.R. § 778.209.

80. As such, Valicenti's overtime rate of pay should have been time-and-one-half of $46.34 per hour, or $69.51, far in excess of the calculated $51.00 rate of overtime pay reflected on the Paystub.

81. Throughout the relevant period, Defendant has undertaken a willful policy and practice of violating the FLSA by failing to pay Plaintiffs overtime at time and one-half their regular rate of pay for all hours worked over 40 in a week, by failing to calculate workers' "regular rate" of pay in accordance with the requirements of 29 C.F.R. 778.200 *et seq.*

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT: INCORRECT OVERTIME RATE

82. Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs.

83. Defendant has repeatedly engaged in a pattern and practice of failing to pay Plaintiffs and other members of the Putative Collective all earned overtime wages at the rate of one and one half time the regular rate of pay.

84. Pursuant to 29 C.F.R. § 778.209, "[w]here a bonus payment is considered a part of the regular rate at which an employee is employed, it must be included in computing his regular hourly rate of pay and overtime compensation."

85. Differentials such as pro-rata differentials, longevity pay after a certain amount of years in service, night-shift differentials, assignment differentials, and other additional cash payments constitute bonus payments within the regular rate of pay, as defined in the FLSA, implementing regulations, and the cases interpreting the same.

86. Defendants paid overtime wages at rates which were less than those to which Plaintiff and others similarly situated were entitled to receive.

87. Defendant has violated the Fair Labor Standards Act by failing to pay all earned overtime wages, at the rate of one and one-half times their regular rate of pay, in weeks in which they worked over forty (40) hours.

88. The failure of Defendant to pay Plaintiffs and members of the Putative Collective their rightfully owed overtime compensation was willful.

89. By the foregoing reasons, Defendant is liable to Plaintiffs and members of the Putative Collective in an amount to be determined at trial, constituting liquidated damages in the amount equal to the amount of unpaid wages owed each pay period to each individual Plaintiff or opt-in Plaintiff, plus interest, attorneys' fees and costs.

**WHEREFORE**, the Plaintiffs demand judgment:

(1) on their First cause of action, in an amount to be determined at trial, constituting the amount equal to the amount of earned but underpaid overtime wages each pay period to each individual Plaintiff or opt-in Plaintiff, plus interest, liquidated damages, attorneys' fees, and costs; and

(2) any other and further relief the Court may deem appropriate.

Dated: New York, New York
September 16, 2021

                              VIRGINIA & AMBINDER, LLP

                              By:    /s/Lloyd R. Ambinder, Esq.
                                        Lloyd R. Ambinder, Esq.
                                        James Emmet Murphy, Esq.
                                        Michele Moreno, Esq.
                                        40 Broad Street, 7th Floor
                                        New York, New York 10004
                                        (212) 943-9080

                              *Attorneys Plaintiffs and the Putative Collective*